**UNITED STATES DISTRICT COURT EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NOS. 1:21-CR-060 |
| | § | 1:21-CR-061 |
| | § | |
| HOWARD LANSON FLUITT | § | |

**MEMORANDUM AND ORDER**

Pending before the court are Defendant Howard Fluitt's ("Fluitt") *pro se* Motions for Early Termination of Supervised Release (Case No. 1:21-CR-060, #4; Case No. 1:21-CR-061, #4), wherein Fluitt seeks early termination of his two life terms of supervised release. The Eastern District of Texas Probation Office ("Probation") opposes his request for early termination and recommends that supervision continue as ordered. The United States Attorney's Office advised Probation that it is also opposed to early termination of Fluitt's supervised release. Having considered the motion, the viewpoint of Probation, the Government's position, the record, and the applicable law, the court is of the opinion that Fluitt's motion should be denied.

I. Background

On March 19, 2009, a federal grand jury in the Southern District of Florida, Fort Pierce Division, returned a one-count indictment against Fluitt, charging him with Transmission of Child Pornography in violation of 18.U.S.C. § 2252(a)(1) (hereinafter, Case No. 2:09-14014). Later, on August 26, 2009, a federal grand jury in the Southern District of Texas, Houston Division, returned a one-count indictment against Fluitt, charging him with Possession of Child Pornography, in violation of 18.U.S.C. §§ 2252A(a)(5)(B), 2252A(b)(2) (hereinafter, Case No. 2:09-14037), which was transferred from the Southern District of Texas to the Southern District of Florida.

In both cases, Fluitt entered into plea agreements. On September 21, 2009, Fluitt was sentenced in the Southern District of Florida to a term of 151 months' imprisonment as to Case No. 2:09-14014 and a term of 120 months' imprisonment as to Case No. 2:09-14037, to run concurrently. Fluitt was also ordered to serve two life terms of supervised release following his terms of imprisonment and to pay a $100.00 special assessment in each case, totaling $200.00.

On November 30, 2009, the court entered Joint Restitution Orders (Case No. 2:09-CR-14014, ##85, 86; Case No. 2:09-CR-14037, ##42, 43) which ordered Fluitt to pay $147,000.00 in restitution in each case to each of the two identified victims, totaling $294,000.00. On November 14, 2019, Fluitt was released from the Bureau of Prisons's custody and began serving his terms of supervised release in Beaumont, Texas. On July 21, 2021, the cases were transferred from the Southern District of Florida to the Eastern District of Texas. Following the transfers, on November 8, 2021, Fluitt's conditions of release were modified to remove certain special conditions imposed by the Southern District of Florida that restricted the following: computer possession, data encryption, and possession of sexual materials. The modification added the Eastern District of Texas's special conditions that prohibit possession of sexually explicit material and require computer monitoring on any device that Fluitt is authorized to use.

On August 31, 2026, Fluitt, age 73, filed the present *pro se* Motion for Early Termination of Supervised Release. He asks the court to terminate his two life terms of supervised release. Fluitt states that he has successfully completed more than six years of supervised release and has met all requirements as to the special conditions imposed.

II. Analysis

Title 18, United States Code, Section 3583(e) authorizes a district court to terminate supervised release at any time after the expiration of one year if, after considering certain of the factors set forth in Section 3553(a),[1] "it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1); *accord United States v. Johnson*, 529 U.S. 53, 59-60 (2000); *United States v. Peters*, 856 F. App'x 230, 233 (11th Cir. 2021); *Herndon v. Upton*, 985 F.3d 443, 446 n.5 (5th Cir. 2021); *United States v. Melvin*, 978 F.3d 49, 52 (3d Cir. 2020); *United States v. Cochran*, 815 F. App'x 361, 363 (11th Cir. 2020); *United States v. Davies*, 746 F. App'x 86, 88-89 (3d Cir. 2018). In addition, the United States Sentencing Guidelines list supplemental factors that the court may wish to consider when determining whether to terminate the remaining term of supervised release.[2] "Early termination of supervised release is not an entitlement." *United States v. George*, 534 F. Supp.

[1] These factors include: the nature and circumstances of the offense and the defendant's history and characteristics; the need to afford adequate deterrence to criminal conduct; the need to protect the public from further crimes of the defendant; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable Sentencing Commission guidelines and policy statements; any pertinent policy statement of the Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense. 18 U.S.C. §§ 3553(a), 3583(e).

[2] Specifically, the Guidelines list: (i) any history of court-reported violations over the term of supervision; (ii) the ability of the defendant to lawfully self-manage (*e.g.*, the ability to problem-solve and avoid situations that may result in a violation of a condition of supervised release or new criminal charges); (iii) the defendant's substantial compliance with all conditions of supervision; (iv) the defendant's engagement in appropriate prosocial activities and the existence or lack of prosocial support to remain lawful beyond the period of supervision; (v) a demonstrated reduction in risk level or maintenance of the lowest category of risk over the period of supervision; and (vi) whether termination will jeopardize public safety, as evidenced by the nature of the defendant's offense, the defendant's criminal history, the defendant's record while incarcerated, the defendant's efforts to reintegrate into the community and avoid recidivism, any statements or information provided by the victims of the offense, and other factors the court finds relevant. U.S.S.G. § 5D1.4, Application Note B.

3d 926, 927 (N.D. Ill. 2021). Instead, the defendant bears the burden of demonstrating that early termination is warranted. *Id.*; *United States v. Luna*, No. 1:95-cr-05036-AWI, 2018 WL 10156108, at *1 (E.D. Cal. Mar. 12, 2018), *aff'd*, 747 F. App'x 561 (9th Cir. 2018). Early termination "is not warranted as a matter of course." *United States v. Morris*, No. 3:99-cr-264-17 (VAB), 2022 WL 3703201, at *3 (D. Conn. Aug. 26, 2022). "To the contrary, it is only 'occasionally' justified." *United States v. Shellef*, No. 03-CR-0723 (JFB), 2018 WL 3199249, at *1 (E.D.N.Y. Jan. 9, 2018) (quoting *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997)). In fact, in *United States v. Bowe*, the United States Court of Appeals for the Fourth Circuit stated that "Congress has manifested an intent to require full service of supervised release for rehabilitative purposes." 309 F.3d 234, 240 (4th Cir. 2002) (citing *Johnson*, 529 U.S. at 53).

District courts enjoy considerable discretion in determining when the interest of justice warrants early termination. *United States v. Tacker*, 672 F. App'x 470, 471 (5th Cir. 2017); *United States v. Jeanes*, 150 F.3d 483, 484-85 (5th Cir. 1998); *Lynn*, 2022 WL 2446328, at *3; *see Melvin*, 978 F.3d at 52. Compliance with the terms of supervised release and with the law alone is not enough to merit early termination; such conduct is expected and required. *United States v. Taylor*, 729 F. App'x 474, 475 (7th Cir. 2018) ("[M]ere compliance with the terms of supervised release is expected, and without more, insufficient to justify early termination under 18 U.S.C. § 3583(e)."); *United States v. Bondy*, No. 19-232, 2026 WL 1282742, at *2 (E.D. La. May 11, 2026) ("[F]ull compliance . . . is merely what is expected of all people serving terms of supervised release." (quoting *Karacsonyi v. United States*, No. 97-1220, 1998 WL 401273, at *1 (2d Cir. June 10, 1998))); *United States v. Seymore*, No. CR 07-358, 2023 WL 3976200, at *1 (E.D. La. June 13, 2023) ("[C]ourts have generally held that something more than compliance

with the terms of [supervised release] is required to justify an early termination . . . ." (quoting *United States v. Smith*, No. 10-cr-53-DPJ-FKB, 2014 WL 68796, at *1 (S.D. Miss. Jan. 8, 2014))); *Lynn*, 2022 WL 2446328, at *4 (although the defendant adhered to the conditions of his release, a balancing of the 18 U.S.C. § 3553(a) factors did not support early termination, noting that the defendant "engaged in constant serious criminal behavior when he was given chances before"); *United States v. Sandles*, No. 11-CR-204-PP, 2021 WL 3080995, at *3 (E.D. Wis. July 21, 2021) ("[C]ourts have held 'that the conduct of the defendant necessary to justify early termination should include more than simply following the rules of supervision; otherwise, every defendant who avoided revocation would be eligible for early termination.'" (quoting *United States v. O'Hara*, No. 00-cr-170, 2011 WL 4356322, at *3 (E.D. Wis. Sept. 16, 2011))); *United States v. Boudreaux*, No. 2:19-CR-00377-01, 2020 WL 7635708, at *1 (W.D. La. Dec. 22, 2020); *United States v. Pittman*, No. 3:15-CR-221-O(1), 2020 WL 6564724, at *2 (N.D. Tex. Nov. 9, 2020) (citing 18 U.S.C. § 3583(e)(1)) (finding that the conduct of the defendant did not warrant early termination of supervised release, as the defendant sought relief based on his circumstances and the alleged conduct of others); *see United States v. Berger*, No. CR 09-308, 2021 WL 2354517, at *5 (W.D. Pa. June 9, 2021) ("Compliance with the conditions of supervision, including refraining from engaging in criminal conduct and paying restitution, however, is required behavior while serving a term of supervised release."). As courts have observed, "if every defendant who complied with the terms of a supervised release were entitled to early termination, 'the exception would swallow the rule.'" *United States v. Kassim*, No. 15 Cr. 554-3 (KPF), 2020 WL 2614760, at *2 (S.D.N.Y. May 22, 2020) (citing *United States v. Medina*, 17 F. Supp. 2d 245, 247 (S.D.N.Y. 1998)).

Fluitt's offenses of conviction involved a phone conversation with an agent who portrayed himself as the father of a prepubescent daughter. Fluitt indicated that he was interested in girls who were eight years old or older. During the conversation, the agent portrayed himself as having a sexual relationship with his 11-year-old daughter. Fluitt responded that he wished he had a "little one" at home. He also described an instance where his 14-year-old neighbor was in his swimming pool, and he persuaded her to take her top off. Fluitt recounted that he removed his shorts, but, before he could act, the girl's mother called for her.

During the conversation, Fluitt transmitted two images of nude prepubescent females and two video clips of prepubescent boys engaging in sexual activities. After his arrest, Fluitt stated that the story of the 14-year-old girl was false. A forensic examination of his computer and thumb drive revealed approximately 2,881 images and 48 videos of child pornography.

Here, Fluitt presents no new or exceptional circumstances or needs that would merit early release from supervision. Rather, Fluitt simply contends that he has fully complied with the conditions of his supervised release. At the outset of his motion, Fluitt states that he has completed more than six years and nine months of supervised release. He avers that he has complied with his conditions, has not been charged with a new crime, and has not violated the terms of his release. Probation confirms that Fluitt has complied with the terms of his supervised release to date. Specifically, Fluitt completed sex offender treatment with Texas Counseling Rehabilitation Services on November 12, 2025, and he complied with the monitoring software on his devices and internet restrictions for three and a half years. His compliance led the court to suspend this condition on March 21, 2024, as recommended by the probation officer. Fluitt paid his special assessment and restitution in full on July 31, 2025. While Fluitt's progress is

satisfactory, these are basic expectations for all defendants on supervised release and do not constitute extraordinary circumstances warranting early termination.

Notably, Fluitt does not contend that the conditions of his supervised release interfere with his family responsibilities or otherwise impact his daily life in a significant manner. In his motion, Fluitt mentions his desire to move closer to his immediate family after the passing of his wife. Fluitt purchased a home in Brackettville, Kinney County, Texas, near his remaining family and adult children. The home is in the Western District of Texas. In May 2026, Fluitt requested relocation to the Western District, but the Probation Office for the Western District of Texas ("Western District Probation") denied his request "pending some work at the residence and additional requirements from the district."

In his motion, Fluitt does not clarify how being on supervised release keeps him from achieving additional goals or engaging in hobbies, religious activities, or volunteer work. According to Probation, Fluitt's Post-Conviction Risk Assessment score is "Moderate/1." His reporting requirements are minimal, requiring only a probation officer to visit his residence once every 90 days and his submitting a monthly supervision report form via the electronic reporting system. Further, Probation granted Fluitt permission to travel to visit his family and to address the necessary changes required by Western District Probation before it reconsiders his request. Under the circumstances, the court finds the current conditions of Fluitt's supervised release are not onerous and remain appropriate.

While Fluitt's compliance to date is promising, requiring Fluitt to complete his terms of supervised release safeguards against the reoccurrence of criminal activity, while imposing only a limited burden. Generally, early termination of supervised release is not granted unless there

are significant medical concerns, substantial limitations on employment, or extraordinary post-release accomplishments that would warrant such a release. Fluitt does not identify any such circumstances in his motion and is instead seeking early termination of his supervision simply for complying with the conditions imposed by the court.

Thus, although Fluitt appears to be on the right path, the court believes that completion of his full term of supervised release appropriately reflects the extent and severity of his offense, deters future criminal conduct, and provides needed structure for his continued rehabilitation. *See Lynn*, 2022 WL 2446328, at *4. "Supervised release is meant as a safety net to support reentry into the community." *Bondy*, 2026 WL 1282742, at *3. In this instance, there is no reason to terminate this safety net prematurely as to Fluitt. Probation further points out that "it is the policy of [Probation] not to recommend or support early termination of supervised release in cases involving sexual offenses," which appears to be the proper course in this situation. "Allowing U.S. Probation to continue to monitor and guide [Fluitt] is advantageous as it is able to offer resources, guidance and accountability to [Fluitt] to ensure he successfully continues h[is] rehabilitation journey." *United States v. Clausell*, No. 1:20cr0091-LG-RPM-1, 2026 WL 1008154, at *2 (S.D. Miss. April 14, 2026).

III. Conclusion

In accordance with the forgoing analysis, Fluitt's Motions for Early Termination of Supervised Release (Case No. 1:21-CR-060, #4; Case No. 1:21-CR-061, #4) are DENIED.

SIGNED at Beaumont, Texas, this 13th day of November, 2026.

Marcia A. Crone

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE